UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TIMOTHY ALAN WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-0184-CVE-JFJ |
| | ) | |
| OFFICER ROBERT MCKINNEY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Timothy Alan Wilson, a state inmate appearing pro se and in forma pauperis, brings this civil rights action, under 42 U.S.C. § 1983, to vindicate the alleged violations of his rights, under the Fourth and Fourteenth Amendments to the United States Constitution.[1] Wilson claims that defendant Robert McKinney, a law enforcement officer employed by the Tulsa Police Department, violated his rights to be free from an unreasonable seizure and to be provided equal protection of the law in April 2020 when McKinney, acting under color of state law, "racially profiled" him, arrested him without probable cause, and used excessive force to make the arrest after McKinney responded to a 911 call about a burglary in progress. McKinney moves for summary judgment, asserting, in part, that he is entitled to qualified immunity. The Court has considered Wilson's amended

---

[1] 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

complaint (Dkt. # 7), McKinney's motion for summary judgment and supporting brief (Dkt. # 24), McKinney's exhibits in support of his motion,[2] Wilson's response (Dkt. ## 33, 34, 35),[3] McKinney's reply (Dkt. # 36)[4] and applicable law. For the reasons that follow, the Court grants McKinney's motion for summary judgment, as to all claims asserted against him, on the basis of qualified immunity.[5]

---

[2]  Two of the exhibits, exhibits 3 and 4, are thumb drives containing video footage of Wilson's arrest from the body cameras worn by McKinney and a second arresting officer. While the physical thumb drives were conventionally filed and docketed as Dkt. # 25, the Court, like McKinney, cites the videos as Dkt. # 24-3 (McKinney's body-worn camera) and Dkt. # 24-4 (Buresh's body-worn camera), and refers to specific facts therein using approximate times based on the clock shown at the bottom of the viewing screen.

[3]  In an order (Dkt. # 30) filed September 2, 2021, the Court provided Wilson additional time to file a response to the motion for summary judgment and established a deadline of September 24, 2021. Wilson filed a response (Dkt. # 33) on September 13, 2021, and two supplemental responses (Dkt. ## 34, 35) on September 24, 2021. The allegations and arguments in all three responses are similar and it is not clear that Wilson intended to file three separate responses. Because Wilson appears pro se, the Court liberally construes all three as a single response to the motion for summary judgment. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

[4]  On October 21, 2021, Wilson filed what he describes a reply (Dkt. # 38) to McKinney's reply brief. Because the local rules of civil procedure permit only a summary judgment motion, a response to the motion, and a reply brief filed by the moving party, the Court did not consider Wilson's "reply" in adjudicating the summary judgment motion.

[5]  In light of this ruling, the Court denies as moot Wilson's motion for appointment of counsel (Dkt. # 37), filed October 21, 2021.

## I.

Applying the rule of liberal construction,[6] the Court reads Wilson's amended complaint as asserting three constitutional claims against McKinney, in his individual capacity, arising from Wilson's arrest on April 6, 2020. First, Wilson claims that McKinney violated his Fourth Amendment right to be free from an unreasonable seizure because McKinney lacked probable cause to arrest Wilson. Dkt. # 7, Am. Compl., at 2-6. Wilson alleges there was "a disturbance" at his residence on April 5, 2020, and he "fled across the street to have the neighbors call the police." Dkt. # 7, Am. Compl., at 2. According to Wilson, when the police arrived, McKinney "drew down on [Wilson], an innocent citizen, only because [Wilson] was black in a nice neighborhood," other police officers live in the same neighborhood, and, in Wilson's view, McKinney "felt" that Wilson "did not deserve to be" in that neighborhood, so McKinney arrested him. Dkt. # 7, Am. Compl., at 5. Wilson further alleges that he was taken to jail when he "was the victim," and that he was "displaced for 3 months" while he was "held for a crime he did not commit which was reduced to unlawful breaking and entering." Dkt. #7, Am. Compl., at 3, 5-6.

Second, Wilson claims that McKinney violated his Fourth Amendment right to be free from an unreasonable seizure because McKinney used more force than necessary to make the arrest. Dkt. # 7, Am. Compl., at 2-6. In support of this claim, Wilson alleges that McKinney "immediately drew his gun on [Wilson]," "slammed [Wilson] to the ground," "twist[ed] [Wilson's] arms to the back," and "deliberately & intentionally broke [Wilson's] right wrist." Dkt. # 7, Am. Compl., at 2, 5-6.

---

[6]     Because Wilson appears without counsel, the Court must liberally construe the amended complaint and Wilson's response. Hall, 935 F.2d at 1110. But that rule neither requires nor permits the Court to act as an advocate on Wilson's behalf. Id.; Gallagher v. Shelton, 587 F.3d 1063, 1067 (10th Cir. 2009).

3

Wilson further alleges that McKinney tried to hide the fact that he broke Wilson's wrist, that Wilson's "arm remains in a cast today," and that his "broken limb" continues to "cause[] him pain on a daily basis." Dkt. # 7, Am. Compl., at 5-6.

Third, Wilson claims that McKinney violated his Fourteenth Amendment right to equal protection of the law because McKinney "vindictively assessed the situation" and "racially profiled" Wilson when McKinney responded to the 911 call. Dkt. # 7, Am. Compl., at 3. Wilson alleges that McKinney "never asked what the disturbance was at [Wilson's] residence," and acted "with deliberate indifference to [Wilson's] rights" to summon the police for his own protection only because Wilson "was an African American male in [a] particular neighborhood." Dkt. # 7, Am. Compl., at 2, 5-6.[7]

Based on these alleged violations of his constitutional rights, Wilson seeks compensatory damages, for his wrist injury, punitive damages to deter future misconduct, and any other relief the Court deems appropriate. Dkt. # 7, Am. Compl., at 3.

In support of his motion for summary judgment, McKinney submitted exhibits that show a markedly different version of events. Those exhibits establish that on April 6, 2020, at approximately 12:40 a.m., McKinney and Officer Corey Buresh, each of whom were driving separate patrol cars, responded to a 911 call reporting a burglary in process, specifically, that a male suspect, later identified as Wilson, was attempting to break into and enter the house at 5514 South Toledo

---

[7]  It is not entirely clear whether Wilson's third claim alleges that race was a motivating factor in McKinney's decision to arrest him or in McKinney's decision not to investigate the alleged disturbance at Wilson's house. "Although there is no general constitutional right to police protection, the state may not discriminate in providing such protection." Watson v. City of Kansas City, 857 F.2d 690, 694 (10th Cir. 1988). In any event, Wilson ultimately would be required to show that a discriminatory purpose motivated McKinney either to make the arrest or to not investigate the alleged disturbance at Wilson's house. Id.

Place, in Tulsa, Oklahoma. Dkt. # 24-1, at 2, 6; Dkt. # 24-2, at 2. As McKinney and Buresh drove to that location, both officers heard updates from the 911 dispatcher advising the officers that the caller's "grandpa is trying to keep the door shut; caller doesn't know the suspect," and, finally, "suspect has kicked in the door." Dkt. # 24-1, at 2; Dkt. # 24-2, at 2. When McKinney and Buresh drove up to the house, both officers saw Wilson inside the house near the front doorway. Dkt. # 24-1, at 2; Dkt. # 24-2, at 2.

Officer Buresh immediately got out of his car with his gun drawn and ordered Wilson to get on the ground. Dkt. # 24-1, at 2, 6; Dkt. # 24-2, at 2; Dkt. # 24-4, at 00:20-00:50. Wilson complied by running out of the house, descending the front steps, and laying face-down on the ground. Dkt. # 24-1, at 2, 6; Dkt. # 24-2, at 2; Dkt. # 24-4, at 00:20-00:50. After Wilson was already on the ground, face-down with his arms outstretched on either side of his body, Officer McKinney ran to Wilson's location, brought Wilson's arms together behind Wilson's back, and placed handcuffs on Wilson's wrists. Dkt. # 24-3, at 00:20-00:35; Dkt. # 24-4, at 00:40-00:50. When Buresh rolled Wilson over, Buresh saw that Wilson had an injury on his leg and asked him if he had been shot or stabbed and where he had come from; McKinney requested an ambulance. Dkt. # 24-3, at 01:28-02:50; Dkt. # 24-4, at 01:35-03:00. Wilson appeared confused and some of his replies were inaudible, but he was able to provide the officers with his name. Dkt. # 24-1, at 3, 6; Dkt. # 24-3, at 02:00-04:30; Dkt. # 24-4, at 02:45-03:08.

McKinney later walked to the front door of the house to speak with the occupants of the house Wilson broke into. Dkt. # 24-1, at 2, 6. As he entered the house, McKinney saw that the door frame was broken and saw pieces of the frame lying on the ground. Dkt. # 24-1, at 2, 6; Dkt. # 24-3, at 11:58-12:20. McKinney then spoke with the family who lived there. Dkt. # 24-1, at 2, 6. The

homeowner, William Rains, told McKinney that he heard someone knocking on the front door about 12:30 a.m., that he looked through the peephole and saw a male he did not recognize, and that he briefly opened the door then immediately shut it. Dkt. # 24-1, at 2-3, 6. The male continued banging on the Rains's door and eventually "busted through the door," so Rains began hitting the male with a baseball bat just as McKinney and Buresh arrived. Dkt. # 24-1, at 3, 6.

Based on his own observations and the statements he obtained from the Rains family,[8] McKinney arrested Wilson on suspicion of first-degree burglary. Dkt. # 24-1, at 1, 6. McKinney followed the ambulance that transported Wilson to St. John Medical Center for treatment of the leg injury and possible injuries from being hit with the baseball bat by Rains. Dkt. # 24-1, at 3, 6. After Wilson was discharged from the hospital, McKinney transported Wilson to the David L. Moss Criminal Justice Center. Dkt. # 24-1, at 3, 6.

On May 5, 2020, Wilson pleaded guilty, in the District Court of Tulsa County, Case No. CF-2020-1610, as to one count of breaking and entering without unlawful intent, and the trial court imposed a one-year jail sentence with the last six months suspended. State v. Wilson, No. CF-2020-1610, oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CF-2020-1610&cmid=3347863, last visited Sept. 29, 2021.[9]

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a);

---

[8] In addition to Rains, McKinney also spoke with Rains's wife and their two granddaughters about the incident. Dkt. # 24-1, at 2, 5-6; Dkt. # 24-3, at 12:20-15:20.

[9] Per McKinney's request, the Court takes judicial notice of the publicly-available state court records in Wilson's related criminal proceeding. Dkt. # 14, at 2 n.2; see FED. R. EVID. 201.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing [substantive] law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In applying the summary-judgment standard, a court must "view the facts in the light most favorable to the non-moving party and resolve all factual disputes and reasonable inferences in its favor." Henderson v. Glanz, 813 F.3d 938, 952 (10th Cir. 2015). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). Consistent with the plain language of Rule 56(a), the movant bears the ultimate burden to show that there are no genuine issues for the jury to resolve and that the movant is entitled to judgment as a matter of law. Thomson v. Salt Lake Cty., 584 F.3d 1304, 1326 (10th Cir. 2009) (Holmes, J., concurring).

The summary-judgment standard applies slightly differently when the defendant asserts that he or she is entitled to qualified immunity. When a plaintiff seeks to impose civil liability against individual law enforcement officers, under § 1983, for acts those officers perform under color of state law, the officers "are entitled to qualified immunity . . . unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was' clearly established at the time.'" Dist. of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff bears an initial burden to show "(1) that [the] defendant violated a constitutional right and (2) that the right was clearly established." Thomson, 584 F.3d at 1325

(Holmes, J., concurring). And, in determining whether the plaintiff has met this burden, "ordinarily courts must 'adopt' [the] plaintiff's 'version of the facts.'" Id. (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). But, at the summary-judgment stage, "a plaintiff's version of the facts must find support in the record." Thomson, 584 F.3d at 1325 (Holmes, J., concurring). However, the court is not required to adopt the plaintiff's version of the facts if that version lacks record support or is "'so utterly discredited by the record that no reasonable jury could have believed' it." Thomson, 584 F.3d at 1325 (Holmes, J., concurring) (quoting Scott, 550 U.S. at 380). The court's first task then "is to determine whether [the] plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the *legal* question before the court" regarding qualified immunity. Id. at 1326 (emphasis in original). Once the "universe of facts" is identified, the court must answer the legal question of whether the officer is entitled to qualified immunity. Id. As to that question, the court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first," Pearson v. Callahan, 555 U.S. 223, 236 (2009), "and may resolve the question by finding either requirement is not met," Mascorro v. Billings, 656 F.3d 1198, 1204 (10th Cir. 2011).

### III.

To meet his burden to establish that McKinney violated his constitutional rights on the bases alleged, Wilson must present facts, supported by some portion of the record that, taken as true, would show: (A) that McKinney arrested him without probable cause which "requires only a probability or substantial chance of [Wilson's involvement in] criminal activity, not an actual showing of such activity." Wesby, 138 S. Ct. at 586 (quoting Illinois v Gates, 462 U.S. 213, 232 (1983)); (B) that the force McKinney used to arrest Wilson was "objectively unreasonable" in light of the severity of the

8

crime at issue, the degree of threat Wilson posed to the safety of the arresting officers or other, and Wilson's resistance to, or attempt to evade, arrest, Graham v. Connor, 490 U.S. 386, 397 (1989); and (C) that McKinney treated Wilson differently from similarly situated individuals and that McKinney was motivated to treat Wilson differently, at least in part, based on Wilson's race, Requena v. Roberts, 893 F.3d 1195, 1210 (10th Cir. 2018); Watson, 857 F.2d at 694.

On the record presented,[10] the Court finds that Wilson cannot satisfy his burden, at the first prong of the qualified-immunity analysis, as to any of his claims. Accepting Wilson's version of the facts as true, to the extent those facts find support in the record, the Court finds that Wilson moved to a house located at 5517 South Toledo Place, in Tulsa, Oklahoma, not long before April 5, 2020, and that some "disturbance" occurred at Wilson's home on April 5, 2020, so he "fled across the street to have the neighbors call the police." Dkt. # 7, Am. Compl., at 2.[11]

Beyond these facts, however, nearly every aspect of Wilson's version of events is either "blatantly contradicted" or "utterly discredited" by other evidence in the record. Scott, 550 U.S. at

---

[10] Because Wilson appears pro se, the Court includes some facts drawn from his verified amended complaint, which the Court treats as an affidavit for purposes of the summary judgment proceeding. See Lantec, Inc., v. Novell, Inc., 306 F.3d 1003, 1019 (10th Cir. 2002) ("A district court may treat a verified complaint 'as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56[(c)(4)].'" (quoting Conaway v. Smith, 853 F.2d 789, 792 (10th Cir. 1988)). Under Rule 56(c)(4), an affidavit or declaration must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(c)(4). However, to the extent any allegations in the amended complaint "are merely conclusory," the Court disregards them. Conaway, 853 F.2d at 793.

[11] Video footage from both officers' body-worn cameras add support to Wilson's allegation that he "fled" from a "disturbance" because, as previously stated, the officers discussed the possibility that Wilson's leg injury may have been the result of a stabbing or shooting. Dkt. # 24-3; Dkt. # 24-4.

380. The arresting officers' affidavits and the video footage from the officers' body-worn cameras, establish that Wilson's neighbors did, in fact, call the police to report a disturbance. But that call was not prompted by Wilson's request for help regarding a disturbance at his own residence. Rather the Rains family called 911 to report that an unknown male, later identified as Wilson, not only was knocking on the Rains's front door but also was trying to, and ultimately did, "bust[] through the door," causing Rains to defend himself and his family with a baseball bat. Dkt. # 24-1, at 6. The evidence further shows that when McKinney and Buresh arrived, both officers saw Wilson inside the front doorway of the Rains's house. After McKinney secured Wilson in handcuffs, McKinney saw the broken door frame as he walked into the house to speak with the Rains family about the incident. Any objectively reasonable officer with knowledge of the facts McKinney confronted would have determined that there was more than a "substantial chance" of Wilson's involvement in criminal activity. Wesby, 138 S. Ct. at 586. Wilson therefore fails to satisfy his burden to show that McKinney arrested him without probable cause, in violation of the Fourth Amendment.

Wilson also fails to show that McKinney violated the Fourth Amendment by using more force than reasonably necessary to make the arrest. The video footage from Buresh's body-worn camera shows that Buresh, not McKinney, approached Wilson with his gun drawn and ordered Wilson to get on the ground. And the video footage from both officers' body-worn cameras shows that Wilson immediately complied by moving away from the house and laying down on the ground, not that McKinney "slammed" Wilson to the ground. There is no dispute that McKinney used some physical force to place handcuffs on Wilson's wrist. But the Fourth Amendment prohibits only the use of force that is objectively unreasonable under the circumstances. See Graham, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . .

necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") And the video footage from both officers' body-worn cameras blatantly contradicts Wilson's assertion that McKinney either engaged in unnecessary "twisting" of Wilson's arms or "intentionally and deliberately" broke Wilson's wrist while placing handcuffs on Wilson.[12] At this stage of the litigation, Wilson must point to evidence in the record to support his factual assertions regarding the degree of force that McKinney used to arrest him. And even though the Court has treated Wilson's verified amended complaint as an affidavit for purposes of summary judgment, the Court need not accept his factual allegations as true or include them in the universe of facts relevant to the qualified-immunity analysis in light of the video footage from the officers' body-worn cameras. On the facts that are sufficiently grounded in the record for purposes of the qualified-immunity analysis, Wilson fails to establish a Fourth Amendment violation based on his allegation that McKinney used excessive force in arresting him.

Lastly, Wilson fails to establish a violation of his Fourteenth Amendment right to equal protection of the law. Wilson's factual assertions, supported by his verified amended complaint, state that McKinney either arrested him or failed to investigate the possibility that Wilson was the victim of a disturbance at Wilson's house because Wilson is African American and Wilson was in a nice neighborhood. But Wilson's story regarding the purpose of McKinney's action in making the

---

[12] Wilson alleges that he has medical records to prove that he suffered a broken wrist. Dkt. # 7, Am. Compl., at 5; Dkt. 33, Resp., at 2. But Wilson did not submit any medical records to the Court. And, at this stage of the litigation, he must point to evidence in the record to support his version of the facts. Thomson, 584 F.3d at 1325 (Holmes, J., concurring). Moreover, contrary to Wilson's apparent position, it is not the Court's duty to obtain that evidence for him. See Dkt. # 33, Resp., at 2 (citing medical records not submitted to the Court and suggesting that those medical records should be "summoned by the [C]ourt"); Gallagher, 587 F.3d at 1067.

11

arrest, or of McKinney's inaction in failing to investigate a purported crime that occurred at Wilson's house, "is blatantly contradicted by the record, so that no reasonable jury could believe it." Scott, 550 U.S. at 380. As previously discussed, McKinney arrested Wilson only after McKinney and Buresh heard the 911 dispatcher report that Wilson broke into the Rains's house, both officers saw Wilson in the doorway of the house, both officers saw Wilson run from the house and lay down in the front yard on Buresh's command, McKinney saw physical evidence of the break-in, and McKinney discussed the incident with four members of the Rains family, all of whom witnessed Wilson break into their home. In light of these facts, no rational juror could believe Wilson's assertion that McKinney treated him differently than any other individual seen breaking into an occupied home by two officers and by four occupants of the home or that race was a motivating factor in McKinney's decision to arrest Wilson. Moreover, the video footage from both officers' body-worn cameras support that McKinney and Buresh asked Wilson about his leg injury, about where he had come from, and about whether he had been shot or stabbed. Wilson, however, while providing the officers with his name, did little else to aid the officers in ascertaining the cause of his leg wound. No rational juror could believe that Wilson's race was a motivating factor in McKinney's alleged decision not to investigate whether Wilson was the victim of a crime that may have occurred at his own home before Wilson broke into the Rains's home. As a result, Wilson fails to satisfy his burden, under the first prong of the qualified-immunity analysis, to show that McKinney violated his Fourteenth Amendment right to equal protection of the law.

## IV.

Because Wilson fails to demonstrate that McKinney's conduct in this case violated his rights, under either the Fourth or Fourteenth Amendments, McKinney is entitled to qualified immunity as

to all three constitutional claims asserted against him. Without any basis for liability, McKinney is necessarily entitled to judgment as a matter of law as to Wilson's claims for damages. The Court therefore grants McKinney's motion for summary judgment.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. McKinney's motion for summary judgment (Dkt. # 24) is **granted**.

2. Wilson's motion for appointment of counsel (Dkt. #37) is **denied**.

3. This is a final order terminating this action.

4. A separate judgment shall be entered in this matter.

**DATED** this 22nd day of October, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE